# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

FRANK HALLEY, as Next Friend )
of J.H., a minor child, )
             )
    Plaintiff, )
             )
vs. )  Case No. 14-CV-562-JHP
             )
STATE OF OKLAHOMA *ex rel.* the )
OKLAHOMA STATE DEPARTMENT OF )
HUMAN SERVICES, *et al.*, )
             )
    Defendants. )

## OPINION AND ORDER

Before the Court are (1) Defendant Oklahoma Department of Human Services' Motion to Dismiss First Amended Complaint (Doc. No. 54), (2) Defendant Sara Huckaby's Motion to Dismiss (Doc. No. 55), and (3) Defendant Independent School District No.4 of Bryan County, Oklahoma's Motion to Dismiss (Doc. No. 60). After consideration of the briefs, and for the reasons stated below, the Motions to Dismiss are **DENIED**.

## BACKGROUND

Plaintiff Frank Halley filed this action as the next friend of J.H., a minor, to recover against the defendants for alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also brings state law claims pursuant to *Bosh v. Cherokee County Governmental Building Authority*, 305 P.3d 994 (Okla. 2013) and the Oklahoma Governmental Tort Claims Act ("OGTCA"), OKLA. STAT. tit. 51, §§ 151 *et seq.* The First Amended Complaint names as defendants (1) the State of Oklahoma *ex rel.* the Oklahoma State Department of Human Services ("OKDHS"), (2) Sara Huckaby (DHS employee), (3) Ken

Golden (Sheriff of Bryan County, Oklahoma), (4) Nathan Callaway (employee of Bryan County, Oklahoma), (5) the City of Colbert, Oklahoma, (6) Jeff Goerke (Chief of Police of the City of Colbert), and (7) Independent School District No. 4 of Bryan County, Oklahoma ("School").

According to the First Amended Complaint, on February 12, 2014, detective Nathan Callaway and an OKDHS employee interviewed Brittany Halley about alleged physical abuse between Brittany and J.H.'s father. (Doc. No. 48, ¶ 7). The interview did not reveal that six-year-old J.H. was in immediate danger of imminent harm, and OKDHS knew that J.H. was living at that time with an appropriate caregiver. (*Id.* ¶ 11). Two days later, on February 14, 2014, Jeff Goerke picked up J.H. from his school without "trustworthy or verified information, warrant, lawful reason, legal process, court order, affidavit or other paperwork that would authorize or justify the removal of J.H. from the school." (*Id.* ¶¶ 13-14). Despite the lack of authority, "employees of School retrieved J.H. and voluntarily presented him to Goerke." (*Id.* ¶ 14). The School "had actual knowledge that J.H. did *not* want to leave with Goerke or ride in his police car, and they had actual knowledge that Goerke had not presented any lawful basis to remove J.H. and force him to leave school property," yet School employees "knowingly allowed Goerke to force J.H. into his police car and drive away." (*Id.* ¶ 17). Although J.H. unequivocally objected to the removal, Goerke transported J.H. in his police car to ABC House in Durant, Oklahoma, approximately thirteen miles from the elementary school. (*Id.* ¶ 15, 18).

At the ABC House, Sara Huckaby and/or Callaway interrogated J.H. about his father for approximately one hour in an attempt "to solicit information to either file criminal charges against [J.H.'s father], or to break apart his family, thus directly targeting the familial relationship." (*Id.* ¶¶ 20, 26). Plaintiff alleges J.H.'s removal and interrogation stemmed from a failed criminal prosecution against J.H.'s father. (*Id.* ¶ 23). Specifically, "the substantial

embarrassment stemming from the failure to obtain a conviction caused OKDHS and Bryan County officials, including Huckaby and Callaway, to target [J.H.'s father] and his family for retaliation in a vain effort to rehabilitate their own credibility and to further their own political and professional ambitions." (*Id.*). Plaintiff alleges Huckaby and Callaway "had actual knowledge that state law did not permit them to unilaterally take custody of J.H. under these circumstances," yet used Goerke "to seize J.H. without warrant or probable cause." (*Id.* ¶ 24). After Huckaby and/or Callaway's efforts to obtain "information necessary to pursue" J.H.'s father failed, Callaway transported J.H. back to his school. (*Id.* ¶ 27). J.H.'s caretaker learned of these events only upon picking up J.H. from school at the end of the school day. (*Id.* ¶ 28). As a result of the seizure and interrogation, J.H. has allegedly suffered stress and trauma requiring professional counseling. (*Id.* ¶ 29).

Plaintiff asserts a total of five causes of action against seven defendants. Relevant to the motions at issue, Plaintiff seeks: (1) relief against OKDHS based on *respondeat superior* liability for "unreasonable seizures or excessive force" in violation of Article 2 § 30 of the Oklahoma Constitution and deprivation of J.H.'s due process rights in violation of Article 2 § 7 of the Oklahoma Constitution; (2) relief under 42 U.S.C. § 1983 against Huckaby for violation of J.H.'s rights under the Fourth and Fourteenth Amendments to the United States Constitution; and (3) recovery against School under the OGTCA for breach of its "duty of reasonable care to ensure that minor children are not removed from the custodial care in violation of the law or without proper legal authority" by "removing or allowing the removal of J.H. from the custodial care of his classroom without proper legal authority." (*Id.* ¶¶ 30-45).

Defendants OKDHS, Huckaby, and School have now moved to dismiss Plaintiff's claims against them pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim

upon which any relief can be granted as a matter of law. Huckaby also seeks dismissal based on qualified immunity. School also seeks dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) based on sovereign immunity.

**DISCUSSION**

In considering a Rule 12(b)(6) motion, the court must accept all well-pleaded allegations of the complaint as true, and must construe them in the light most favorable to the plaintiff. *See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1284 (10th Cir. 2008). To withstand a motion to dismiss, a complaint must contain enough allegations of fact "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Tenth Circuit has stated that "plausibility" in this context refers "to the scope of the allegations in the complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 569). The plaintiff bears the burden to frame "a complaint with enough factual matter (taken as true) to suggest" that he or she is entitled to relief. *Twombly,* 550 U.S. at 556. "A pleading that offers 'labels and conclusions' or a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555, 557).

**I.     Motion of OKDHS**

Plaintiff asserts two *respondeat superior* claims against OKDHS as a result of Huckaby's actions: (1) violation of Article 2 § 30 of the Oklahoma Constitution for "unreasonable seizure"

4

or "excessive force" and (2) violation of Article 2 § 7 of the Oklahoma Constitution for "unlawful targeting and interference with the familial relationship."

With respect to these claims, Plaintiff seeks to rely on the Oklahoma Supreme Court's decision in *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (2013). In *Bosh*, the court recognized a private right of action for excessive force based on Article 2 § 30 of the Oklahoma Constitution, notwithstanding the limitations of the OGTCA. It further recognized the doctrine of *respondeat superior* could apply as an available theory of recovery against municipal employers for claims under that provision.

OKDHS argues *Bosh*, which involved a claim for excessive force by a corrections officer against a handcuffed detainee, is factually distinguishable and should not be extended to the circumstances pled in this case. OKDHS cites several cases examining *Bosh*, in which the court concluded the *Bosh* rule and rationale did not extend to different factual circumstances. *See Hedger v. Kramer*, 2013 WL 5873348, at *3 (W.D. Okla. Oct. 30, 2013) (declining to extend *Bosh* rule to DHS for alleged "seizure" by placing child in foster care); *accord Bishop v. Oklahoma*, 2013 WL 6192114, at *3-4 (W.D. Okla. Nov. 26, 2013); *Koch v. Juber*, 2014 WL 2171753, at *3 (W.D. Okla. May 23, 2014) (declining to extend *Bosh* rule to cover due process claims, noting that "Bosh does not serve to create a private right of action for all claims arguably arising under the Oklahoma Constitution.").

Plaintiff argues the *Bosh* rule extends beyond claims of excessive force occurring inside a jail or prison and recognizes a private right of action for all state constitutional violations. In support, Plaintiff cites *White v. City of Tulsa*, 979 F. Supp. 2d, 1246 (N.D. Okla. 2013), in which an Oklahoma district court favored a more expansive approach to *Bosh* claims. *See id.* at 1249 ("The Court interprets Bosh to recognize a private cause of action for violations of the rights

5

protected by Article 2, § 30, rather than merely recognizing a private right of action for excessive force.").

Here, Oklahoma state law governs the dispute, and "[i]t is unclear how expansively the Oklahoma Supreme Court will apply the rule and rationale it adopted in *Bosh*." *Hedger*, 2013 WL 5873348, at *3. In the absence of an authoritative pronouncement from the state's highest court, this Court's task is to predict how the state's highest court would rule. *Daitom, Inc. v. Pennwalt Corp.*, 741 F.2d 1569, 1574 (10th Cir. 1984). "This court must also follow any intermediate state court decision unless other authority convinces [it] that the state supreme court would decide otherwise." *Id.* (citing *Delano v. Kitch*, 663 F.2d 990, 996 (10th Cir. 1981)). "[T]he policies underlying the applicable legal doctrines, the doctrinal trends indicated by these policies, and the decisions of other courts may also inform this court's analysis." *Id.* (citing *Pennsylvania Glass Sand Corp. v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3d Cir. 1981)).

Both OKDHS and Plaintiff cite to a recent decision from the Oklahoma Court of Civil Appeals in support of their respective positions: *GJA v. Oklahoma Department of Human Services*, 347 P.3d 310 (Okla. Civ. App. 2015). *GJA* examined the applicability of *Bosh* claims under a *respondeat superior* theory to DHS for child abuse committed by private actors. The plaintiff in *GJA* alleged that "Daughter was sexually abused and Son was abused by withholding needed medical treatment . . . [which] DHS was informed about . . . and the agency and its employees did nothing [and that] DHS and its employees did not report the sexual abuse as required by law." *Id.* at 312. The plaintiffs filed *Bosh* claims against DHS under these facts for violation of their rights under the Oklahoma Constitution. DHS moved to dismiss the *Bosh* claims under Rule 12(b)(6) for failure to state a claim. The trial court dismissed the claim, and the Civil Court of Appeals affirmed on appeal.

In affirming dismissal of the *Bosh* claim, the Court of Civil Appeals in *GJA* nonetheless noted, "[t]he *Bosh* case is not limited to its facts and specific holding. It does stand for the proposition that the Supreme Court recognizes a broader scope of actionable claims based upon violations of constitutional rights." *Id.* at 316. The court in *GJA* cautioned, however, that a violation of constitutional rights must occur for a *Bosh* claim to lie. *Id.* Accordingly, the court concluded:

> This Court interprets *Bosh* as providing a cause of action in order to protect against violations of constitutional rights and guarantees *in general* rather than being limited to the specific constitutional right involved in the case. Nevertheless, not every misfeasance, malfeasance and nonfeasance amounts to a violation of constitutional rights. In its role as gatekeeper, the trial court determines whether the alleged conduct might reasonably be determined to be of the character of a violation of constitutional rights. Here, the alleged action and inaction on the part of DHS might constitute gross negligence, but they do not rise to the level of a violation of constitutional rights."

*Id.* at 318 (emphasis added).

Thus, the key observation in *GJA* is that, while *Bosh* may provide a cause of action for violations of constitutional rights generally, the state may not be responsible for failure to comply with its reporting obligations or to protect an individual's safety against all possible danger. This conclusion provides appropriate limits on *Bosh* claims and comports with U.S. Supreme Court decisions addressing similar concerns. *See DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189, 201 (1989) ("the State does not become the permanent guarantor of an individual's safety by having once offered him shelter."); *Town of Castle Rock, Colorado v. Gonzales*, 545 U.S. 748, 768 (2005) (no state liability for failure to comply with state law obligating law enforcement to enforce restraining order). The Court finds *GJA* to be persuasive authority regarding the limits of *Bosh*.

In this case, the Court disagrees with OKDHS' argument that Plaintiff's allegations against it amount to no more than claims of negligence, which are not actionable *Bosh* claims under *GJA*. Unlike *GJA*, this case does not involve failure to report actions by third parties or allegations of omission by OKDHS. Rather, Plaintiff alleges affirmative, intentional acts by Defendant Huckaby and her employer OKDHS in having J.H. removed from school without permission or legal authority. Plaintiff alleges Huckaby "had actual knowledge that state law did not permit [her] to unilaterally take custody of J.H. under these circumstances," yet she used Goerke to seize J.H. without warrant or probable cause." (Doc. No. 48, ¶ 24). Plaintiff alleges there was no immediate threat of harm to J.H., and Huckaby participated in the seizure and interrogation solely to retaliate against J.H.'s father for unrelated criminal conduct. (*Id.* ¶¶ 11, 23). Plaintiff alleges Huckaby attempted to solicit information from J.H. about his father "to either file criminal charges against [J.H.'s father], or to break apart his family, thus directly targeting the familial relationship." (*Id.* ¶¶ 20, 26). These allegations are sufficient to state plausible claims for violation of Article 2 § 30 and Article 2 § 7 of the Oklahoma Constitution.

In its reply brief, OKDHS additionally argues that Plaintiff's *Bosh* claims should be dismissed because Plaintiff submitted an OGTCA notice to OKDHS on February 5, 2015. (*See* Doc. No. 6-1 (OGTCA notice)). OKDHS correctly states that the Oklahoma Supreme Court has limited *Bosh* claims to those that may be brought against a municipality only when a cause of action under the OGTCA is not available. *Perry v. City of Norman*, 341 P.3d 689, 689 (Okla. 2014). However, the Court will not comment on the availability of an OGTCA claim against OKDHS in this case, because this point was raised only in OKDHS' response brief, which is improper. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief.").

Even if OKDHS's argument were properly raised, the Court is not convinced the submission of an OGTCA notice would suffice to bar Plaintiff's *Bosh* claims. Plaintiff has not pursued an OGTCA claim against OKDHS, and OKDHS does not make any effort to explain how Plaintiff's allegations are in fact remediable under the OGTCA. For this reason, the Order cited in OKDHS' notice of supplemental authority, *Combs v. State of Oklahoma*, Case No. CIV-15-11-RAW (E.D. Okla. August 27, 2015) (filed as Doc. No. 76-1), is distinguishable. In *Combs*, the plaintiff filed both OGTCA and *Bosh* claims against DHS for the same conduct. Thus, it was plain to the court that "plaintiff does have the [O]GTCA remedy available." *Id.* at 6. It is not so plain to this Court that an OGTCA remedy is available to Plaintiff here, and the Court declines to engage in a *sua sponte* analysis of whether an OGTCA remedy is available under the alleged facts. Accordingly, the motion of OKDHS is denied.

## II.    Motion of Huckaby

Plaintiff asserts two causes of action against Huckaby: (1) violation of J.H.'s Fourth Amendment rights for unreasonable seizure, actionable pursuant to 42 U.S.C. § 1983 and (2) violation of J.H.'s Fourteenth Amendment rights for her "surreptitious seizure and interrogation of J.H." that "imposed an undue burden on the Plaintiff's associational rights," actionable pursuant to 42 U.S.C. § 1983. (Doc. No. 48, ¶¶ 30-35). Huckaby seeks dismissal of both counts against her, for failure to state a claim and based on qualified immunity.

### A.    Failure to State a Claim

First, Huckaby submits both counts against her fail to state a claim upon which any relief can be granted. To state a claim for relief in a § 1983 action, a plaintiff must establish the defendant's conduct deprived him of a federal constitutional or statutory right and the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526

9

U.S. 40, 49-50 (1999). Huckaby argues the allegations against her are so "broad and general that they encompass a wide swath of innocent conduct," and the allegations amount to no more that "labels and conclusion" or "formulaic recitation of the elements" of a § 1983 claim. (Doc. No. 55, at 9).

However, the Court finds Plaintiff's factual allegations to be sufficient to state a plausible claim for relief under § 1983. As Plaintiff points out, a child's Fourth and Fourteenth Amendment rights may be implicated when he is unlawfully seized by state actors from a safe place. *See J.B. v. Washington Cnty.*, 127 F.3d 919, 928-29 (10th Cir. 1997) (county employees' temporary removal of child from her home for questioning regarding possible abuse implicated child's Fourth Amendment rights). Plaintiff alleges Huckaby, a DHS employee, had "actual knowledge that state law did not permit [her] to unilaterally take custody of J.H. under [the] circumstances," yet Huckaby and/or Callaway "used Goerke to intentionally circumvent state law to seize J.H. without warrant or probable cause." (Doc. No. 48, ¶ 24). Plaintiff alleges Huckaby interrogated J.H. at ABC House about his father without the knowledge or permission of any guardian or caretaker, in an attempt to solicit information about J.H.'s father to file criminal charges against him or to break apart his family. (*Id.* ¶¶ 19-20, 26). Plaintiff further alleges Huckaby and others targeted J.H.'s father and his family for retaliation, following a failed attempt to convict J.H.'s father on unrelated criminal charges. (*Id.* ¶ 23). Finally, Plaintiff alleges J.H. suffered "stress, trauma and damages induced and caused by the Defendants." (*Id.* ¶ 29). Taken as true, these allegations are sufficient to nudge Plaintiff's § 1983 claims "across the line from conceivable to plausible." *Robbins*, 519 F.3d at 1247 (quotation omitted).

### B. Qualified Immunity

Second, Huckaby argues she is entitled to qualified immunity from personal liability for any § 1983 claim alleged against her in this case. "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, in a § 1983 action in which the defense of qualified immunity from individual liability is at issue, "[t]he *Twombly* standard may have greater 'bite,' appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest stage of a litigation." *Robbins*, 519 F.3d at 1249 (quotation omitted). Therefore, to "nudge their claims across the line from conceivable to plausible in this context," the plaintiff must allege facts sufficient to show (1) the defendant's conduct violated their constitutional rights, and (2) those rights were "clearly established" at the time of the defendant's alleged misconduct. *Id.* (quotation omitted); *Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

The plaintiff bears the burden of convincing the court that the law at the time of defendant's actions was clearly established. *Hilliard v. City and County of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991). To do so, the plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Id.* (quotation omitted). Generally, for a right to be "clearly established," "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (quotation

omitted). "The plaintiff is not required to show, however, that the very act in question previously was held unlawful in order to establish an absence of qualified immunity." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (quotation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," and immunity may be denied only "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded" that the conduct was lawful at the time the defendant acted. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

### 1. Fourth Amendment

Here, Plaintiff alleges deprivation of J.H.'s Fourth Amendment right to be secure against unreasonable government seizures without probable cause. Specifically, Plaintiff alleges Huckaby used a police officer to remove six-year-old J.H. from his school, without lawful authority and over J.H.'s objection, and transport him to a separate location thirteen miles from J.H.'s school. (Doc. No. 48, ¶¶ 18, 24). Plaintiff alleges OKDHS had no reason to believe J.H. was in immediate danger of imminent harm at his school, and thus no reason existed to remove J.H. from there. (*Id.* ¶¶ 11, 24). Plaintiff alleges Huckaby interrogated J.H. for an hour about his father, in an attempt to obtain unrelated criminal evidence against his father. (*Id.* ¶¶ 20, 26). The interrogation is alleged to be part of a retaliation scheme by Huckaby and other officials against J.H.'s father, resulting from a failed criminal prosecution against him. (*Id.* ¶ 23).

Plaintiff's specific factual allegations suffice to allege a Fourth Amendment claim under clearly established law. "A person is seized within the meaning of the Fourth Amendment when 'a reasonable person would believe that he or she is not "free to leave."'" *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (quoting *Florida v. Bostick*, 501 U.S. 429, 435 (1991)). As discussed above, the Tenth Circuit has recognized the Fourth Amendment rights of

12

minor children to be free from unreasonable seizure since at least 1997. *See J.B. v. Washington Cnty.*, 127 F.3d 919, 928-29 (10th Cir. 1997). Since at least 2003, the Tenth Circuit has recognized "[t]here is no 'social worker' exception to the Fourth Amendment." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1205 (10th Cir. 2003) (citing *Ferguson v. City of Charleston*, 532 U.S. 67, 76 n.9 (2001)). In 2006, the Tenth Circuit found a child may be seized from a home when there is "reasonable suspicion of an immediate threat to the safety of the child," taking into account "*all relevant circumstances*, including the state's reasonableness in responding to a perceived danger, as well as the objective nature, likelihood, and immediacy of danger to the child." *Gomes v. Wood*, 451 F.3d 1122, 1131 (10th Cir. 2006) (quotation omitted). Here, no such reasonable suspicion of an immediate threat of harm to J.H. is alleged. Rather, Plaintiff alleges J.H. was seized and taken to another location several miles away without any lawful authority or reasonable suspicion of any threat, immediate or otherwise, to J.H.'s safety.

Huckaby argues the Oklahoma Children's Code authorizes OKDHS social workers to interview a possible child abuse or neglect victim "at any place, including, but not limited to the child's school" without prior permission from the person responsible for the child's care and safety. OKLA. STAT. tit. 10A, § 1-2-105(B)(1). Huckaby's argument is not persuasive. Plaintiff does not allege J.H. was seized and interrogated in relation to a child abuse investigation. To the contrary, Plaintiff alleges Huckaby acted with a conspiratorial motive unrelated to J.H.'s safety, imminent or otherwise, and that she acted in the absence of any legal authority at all. (Doc. No. 48, ¶¶ 23-24). Moreover, Huckaby's cited authority for interviewing J.H., though it does authorize *interviewing* a child "at any place," does not authorize *removing* a child from school in order to interview him at a place of her choosing. The Court cannot reasonably read such authority into the statute, as such a reading would authorize OKDHS workers to seize and

transport a child to any location for the purpose of an interview. This cannot be the statute's intent. Plaintiff alleges no immediate threat of imminent harm to J.H. existed that would have allowed Huckaby to direct J.H.'s lawful removal from school. *Cf.* OKLA. STAT. tit. 10A, §§ 1-4-201(A)(1)(a)-(c) (permitting a peace officer to take a child into custody without court order if he has "reasonable suspicion" that the child is in need of immediate protection due to an "imminent safety threat"). Accordingly, Huckaby is not shielded from liability with respect to Plaintiff's Fourth Amendment claim. Her request for qualified immunity from this claim is denied.

### 2. Fourteenth Amendment

Plaintiff also alleges a substantive due process claim against Huckaby under the Fourteenth Amendment. Specifically, Plaintiff alleges violation of J.H.'s right to family integrity and association. When a substantive due process claim under § 1983 is at issue, the court must examine "whether the challenged government action shocks the conscience of federal judges." *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (quotation omitted). In this regard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Id.* (quotation omitted).

A plaintiff establishes a claim for deprivation of the right to familial association under the Fourteenth Amendment by alleging that "(1) defendants intended to deprive them of their protected relationship with their [family member], and that (2) balancing the [plaintiff's] interest in their protected relationship with [the family member] against the state's interest in [the child's] health and safety, defendants either unduly burdened plaintiffs' protected relationship, or effected an 'unwarranted intrusion' into that relationship." *Thomas v. Kaven*, 765 F.3d 1183, 1196 (10th Cir. 2014) (internal citations omitted). However, "[w]hether the right to familial

14

association has been violated requires the court to conduct a fact-intensive balancing test not ordinarily suitable for the Rule 12(b)(6) stage." *Id.*

Huckaby argues Plaintiff fails to allege a violation of the Fourteenth Amendment, because "[t]he right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993). While Huckaby correctly states the law, J.H.'s seizure and interrogation was allegedly unrelated to any child abuse investigation. Rather, Plaintiff specifically alleges Huckaby intended to damage J.H.'s familial relationship by interrogating J.H. about his father, and that no health or safety concerns regarding J.H. were at stake. (Doc. No. 48, ¶¶ 7-12, 26). Indeed, Plaintiff alleges two days passed between Brittany Halley's report of abuse and J.H.'s interrogation, which supports the reasonable inference that OKDHS did not believe J.H.'s welfare was at imminent risk. Plaintiff's allegations that J.H. suffered trauma and needed counseling also support the reasonable inference that Huckaby's conduct either unduly burdened or effected an unwarranted intrusion into J.H.'s relationship with his father. This law was clearly established by 2014. *See, e.g., Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1175 (10th Cir. 2013) ("In order to show deprivation of the right to familial association, a plaintiff must show that the state actor intended to deprive him or her of a specially protected familial relationship."); *PJ ex. rel. Jensen v. Wagner*, 603 F.3d 1182, 1199 (10th Cir. 2010) ("The purpose of the balancing test is to ascertain whether a defendant's conduct constitutes an undue burden on the plaintiff's associational rights."); *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1190 (10th Cir. 1985) ("[W]e conclude that an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983.").

Huckaby also argues her alleged conduct is not "conscience shocking." The Court disagrees. Huckaby's alleged actions, if proven true, do indeed "shock the conscience" of the Court and demonstrate actions that no reasonably competent social worker would believe was lawful. Under the circumstances, Huckaby's alleged action were either "plainly incompetent" or done in knowing violation of the law. *Hunter v. Bryant*, 502, U.S. 224, 229 (1991) (quotation omitted). Accordingly, Huckaby is not entitled to qualified immunity from personal liability with regard to Plaintiff's claims under the Fourteenth Amendment. Huckaby's motion is denied.

### III. Motion of School

Plaintiff asserts one cause of action against School: liability under the OGTCA for breach of its "duty of reasonable care to ensure that minor children are not removed from the custodial care in violation of the law or without proper legal authority," by "removing or allowing the removal of J.H. from the custodial care of his classroom without proper legal authority." (Doc. No. 48, ¶ 45). School seeks to dismiss this count against it, based on lack of subject matter jurisdiction (sovereign immunity) under Federal Rule of Civil Procedure 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

Federal courts are courts of limited jurisdiction, and there is a presumption against the exercise of federal jurisdiction. *Merida Delgado v. Gonzales*, 428 F.3d 916, 919 (10th Cir. 2005). The party asserting jurisdiction has the burden to allege jurisdictional facts demonstrating the presence of federal subject matter jurisdiction. *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction "generally take one of two forms." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001). "First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction. In reviewing a facial attack, the district court must

accept the allegations in the complaint as true." *Id.* (internal citation omitted). The second type of attack goes beyond the allegations in the complaint and challenges "the facts upon which subject matter jurisdiction depends." *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).

Here, School appears to be making a facial attack on Plaintiff's complaint based on School's sovereign immunity for the acts alleged pursuant to the OGTCA. The OGTCA generally immunizes "the state, its political subdivisions, and all of their employees acting within the scope of their employment" from liability for torts. OKLA. STAT. tit. 51, § 152.1(A). This immunity is subject to a limited waiver for the state and its political subdivisions, but "only to the extent and in the manner provided" in the OGTCA. OKLA. STAT. tit. 51, § 152.1(B).

School argues it is immune from suit with respect to Plaintiff's OGTCA claim because, as a political subdivision, it is absolutely immune from liability for those actions where a private person or entity would be immune from liability for money damages under Oklahoma law. OKLA. STAT. tit. 51, § 153(A).[1] School argues that, by granting Goerke access to J.H. in connection with a child abuse investigation, it cannot be subject to suit because Oklahoma law provides that "[a]ny person who, in good faith and exercising due care, . . . allows access to a child by persons authorized to investigate a report concerning the child shall have immunity from any liability, civil or criminal, that might otherwise be incurred or imposed." OKLA. STAT. tit. 10A § 1-2-104(A). Moreover, DHS is entitled to interview a child "at any place," including the child's school, when a report of child abuse is made. OKLA. STAT. tit. 10A § 1-2-105(B)(1).

School is correct that, like a private individual, it may not be held liable for granting *access* to J.H. for the purpose of investigating possible child abuse. However, Plaintiff does not allege that School employees allowed access to OKDHS to J.H. *at the school* for an interview.

---

[1] It is undisputed that School is a "political subdivision" of the State of Oklahoma. OKLA. STAT. tit. 51 § 152(11)(b).

Instead, Plaintiff alleges School employees "knowingly allowed Goerke to force J.H. into his police car and drive away," with actual knowledge that J.H. did not want to leave with Goerke or ride in his police car, and with actual knowledge that Goerke had not presented any lawful basis to remove J.H. and force him to leave school property. (Doc. No. 48, ¶ 17).

The immunity statute cited by School, § 1-2-104(A), does not provide such broad immunity as to cover *removal* of a child from his school solely for investigation purposes. To the extent School urges the Court to read such authority into the statute, the Court declines to do so. A reading of "access" to cover "removal" of the child would go directly against the stated goal of the Oklahoma Children's Code to protect the child's best interests, because it would allow authorities to disrupt a child's routine unnecessarily. Such a reading would immunize anyone who allows a police officer to remove a child from school, without any authority, and transport him to any location. *See* OKLA. STAT. tit. 10A, § 1-1-102(E) ("It is the intent of the Legislature that the paramount consideration in all proceedings within the Oklahoma Children's Code is the best interests of the child."). This reading not only appears contrary to the best interest of the child, but also raises potential safety and constitutional concerns.

School has identified no authority for allowing removal of J.H. from his school, and Plaintiff specifically alleges no such authority existed. (*See* Doc. No. 48, ¶ 17 (alleging School employees had "actual knowledge that Goerke had not presented any lawful basis to remove J.H. and force him to leave school property."). *Cf. Gomes v. Wood*, 451 F.3d 1122, 1130 (10th Cir. 2006) (holding state officials may seize a child from the home "when they have a reasonable suspicion of an immediate threat to the safety of the child if he or she is allowed to remain there."). Accordingly, the Court disagrees with School's argument that removal of a child by law enforcement to a child advocacy center for an interview is "authorized and contemplated in

the child abuse reporting statutes." (Doc. No. 64, at 2). School's cited authority on this point, *Myers v. Lashley*, 44 P.3d 553 (Okla. 2002), is inapplicable. *Myers* addressed immunity from liability for *reporting* child abuse and consequent harm, not for *removing* a child from school for the purpose of an interview.

In this case, the Court concludes School is not immune from suit under the OGTCA, because School is not entitled to rely on immunity enjoyed by those who allow "access" to a child for purposes of investigating a child abuse complaint. "Access" in this context does not cover allowing removal of a child from school premises to conduct a DHS interview. Plaintiff has sufficiently alleged School employees breached their duty of reasonable care to ensure that J.H. was not removed from their custodial care without proper legal authority. Accordingly, School's motion is denied.

## CONCLUSION

For the reasons detailed above, the Motions to Dismiss (Doc. Nos. 54, 55, 60) are **DENIED.**

**SO ORDERED** this 31st day of March, 2016.

_____
James H. Payne
United States District Judge
Eastern District of Oklahoma