# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

FRANK HALLEY, as Next Friend )
of J.H., a minor child, )
                                      )
               Plaintiff, )
                                      )
vs. )          **Case No. 14-CV-562-JHP**
                                      )
STATE OF OKLAHOMA *ex rel.* the )
OKLAHOMA STATE DEPARTMENT )
OF HUMAN SERVICES, *et al.*, )
                                      )
               Defendants. )

## OPINION AND ORDER

Before the Court are (1) Defendant Sara Huckaby's Motion for Summary Judgment (Doc. No. 105), (2) Defendant Oklahoma Department of Human Services' Motion for Summary Judgment (Doc. No. 104), (3) Defendants Nathan Calloway[1] and Ken Golden's Motion for Summary Judgment (Doc. No. 103), and (4) Defendant Jeff Goerke's Motion for Summary Judgment (Doc. No. 101). After consideration of the briefs, and for the reasons stated below, the Motions for Summary Judgment of Sara Huckaby, Oklahoma Department of Human Services, Nathan Calloway, and Jeff Goerke are **DENIED**, and the Motion for Summary Judgment of Ken Golden is **GRANTED IN PART**.

## BACKGROUND

Plaintiff Frank Halley filed this action as the next friend of J.H., a minor, to recover against the defendants for alleged violations of the Fourth and Fourteenth Amendments to the United States Constitution. Plaintiff also brings state law claims pursuant to *Bosh v. Cherokee*

---

[1] Although this defendant is identified as "Nathan Callaway" in various filings, the Court believes the correct spelling is "Calloway," based upon Calloway's own Declaration (Doc. No. 110-1).

*County Governmental Building Authority*, 305 P.3d 994 (Okla. 2013) and the Oklahoma Governmental Tort Claims Act ("OGTCA"), OKLA. STAT. tit. 51, §§ 151 *et seq.* The First Amended Complaint names as defendants (1) the State of Oklahoma *ex rel.* the Oklahoma State Department of Human Services ("OKDHS"), (2) Sara Huckaby (DHS employee), (3) Ken Golden, in his official capacity as Sheriff of Bryan County, Oklahoma, (4) Nathan Calloway (employee of Bryan County, Oklahoma), (5) the City of Colbert, Oklahoma, (6) Jeff Goerke (Chief of Police of the City of Colbert), and (7) Independent School District No. 4 of Bryan County, Oklahoma ("School"). The City of Colbert and School have since been terminated from this action. (*See* Doc. Nos. 183, 199).

The record reveals the following events took place. On February 12, 2014, at 7:55 a.m., an anonymous call was made to the OKDHS hotline, in which the caller stated there was a concern for the safety of six-year-old J.H. from his father, a drug abuser. (Doc. No. 124-3, (Referral Information Report)). The call was assigned a "Priority Two," which is a lower priority case, giving OKDHS several days to respond. (Doc. No. 124-1 ("Reed Depo."), at 22:16-23:18; 59:20-60:23). Although the parties dispute the full content of the call referral, the Referral may have alleged combative behaviors between J.H.'s father and stepmother in the presence of the children.[2] As a result of the call referral, Reed, OKDHS supervisor Crystal Keeney, and Defendant Deputy Nathan Calloway from the Bryan County Sheriff's Department met on the morning of February 13, 2014, to discuss how to proceed. (Reed Depo., at 15:22-

---

[2] Plaintiff argues the call referral itself does not describe any exposure to domestic violence with regard to J.H. Indeed, the four-page Referral Information Report only states the caller expressed concern for the safety of J.H. regarding his father, a methamphetamine abuser who had been arrested in January 2014 for possession of meth, meth paraphernalia, and a firearm. (Doc. No. 124-3). Upon request, Defendants submitted a supplemental referral report, which does describe combative behaviors between J.H.'s father and Brittany Halley in the presence of the children. (Doc. No. 124-2). However, the supplemental report does not appear consistent with the original Referral, which causes the Court to question its authenticity as a contemporaneous report made on February 12, 2014. *See, e.g.*, Doc. No. 124-2, at 2 (stating Mr. Halley denied DHS the opportunity to interview J.H., which is inconsistent with other evidence surrounding the February 12, 2014, Referral and subsequent investigation).

16:11).[3]  According to Reed, the three discussed the call and the family's history, and agreed to conduct a forensic interview of J.H. at the ABC House the following day.  (*Id.* at 32:11-22; 33:23-34:8).  Reed testified it was Calloway's idea to take protective custody of J.H. for the interview, based on Calloway's assessment that J.H.'s parents probably would not be cooperative.  (*Id.* at 15:4-17).  However, Calloway stated OKDHS asked him to place J.H. in protective custody for purposes of the interview on February 14, 2014, and he had no opinion about the urgency of the interview at that time.  (Doc. No. 110-1 (Declaration of Nathan Calloway ("Calloway Decl."), at ¶¶ 10-11).

On February 14, 2014, Calloway spoke with Reed and explained he could not pick up J.H. for the interview.  (Reed Depo., at 34:18-24).  Reed asked Defendant Sara Huckaby to contact Defendant Jeff Goerke, Chief of Police of the City of Colbert, to transport J.H. to the ABC House for the interview.  (*Id.* at 35:1-8).  Goerke picked up J.H. from his school and placed him in "protective custody."  (Doc. No. 106-2 ("Sara Huckaby Affidavit").  Goerke transported J.H. to the ABC House in Durant, Oklahoma, approximately thirteen miles from the elementary school.  (*Id.*; Doc. No. 48, ¶ 18).

At the ABC House, Sara Huckaby interviewed J.H. about his life at home and his relationship with his father for approximately forty minutes.  (Doc. No. 106-6 (DVD of recorded interview of J.H. by Sara Huckaby, Feb. 14, 2014)).  Calloway arrived at the ABC House before the interview began, in order to set up the recording equipment.  (Calloway Decl., ¶¶13-16).  After the interview, Calloway transported J.H. back to his school.  (*Id.*, ¶ 21).  As a result of the seizure and interrogation, Plaintiff alleges J.H. has suffered stress and trauma requiring professional counseling.  (Doc. No. 48, ¶ 29).

---

[3] Although he does not expressly dispute the meeting took place, Calloway does not refer to this meeting in his own declaration and states his initial involvement with this investigation was on February 14, 2014.  (Doc. No. 110-1 (Declaration of Nathan Calloway), ¶ 10).

Plaintiff asserts a total of five causes of action against five remaining defendants. Plaintiff seeks: (1) relief under 42 U.S.C. § 1983 against Huckaby, Goerke, and Calloway for violation of J.H.'s rights under the Fourth Amendment to the United States Constitution; (2) relief under 42 U.S.C. § 1983 against Huckaby and Calloway for violation of J.H.'s rights under the Fourteenth Amendment to the United States Constitution; (3) relief against OKDHS and Sheriff Ken Golden in his official capacity, based on *respondeat superior* liability for Huckaby and Calloway's "unreasonable seizures or excessive force" in violation of Article 2 § 30 of the Oklahoma Constitution; (4) relief against OKDHS and Sheriff Ken Golden in his official capacity, based on *respondeat superior* liability for Huckaby and Calloway's deprivation of J.H.'s due process rights in violation of Article 2 § 7 of the Oklahoma Constitution; and (5) relief under the Oklahoma Governmental Tort Claims Act ("OGTCA"), OKLA. STAT. tit. 51, §§ 151 *et seq*. against Sheriff Ken Golden in his official capacity, for failure to exercise reasonable care by removing or allowing the removal of J.H. from the custodial care of his classroom without proper legal authority. (*Id.* ¶¶ 30-45).

All five remaining Defendants have now moved for summary judgment. (Doc. Nos. 101, 103, 104, 105). The motions are fully briefed and ripe for review.

## DISCUSSION

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences

are to be drawn in his favor." *Id.* at 255. However, a party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## I.    Motion of Huckaby

Plaintiff asserts two causes of action against Huckaby: (1) violation of J.H.'s Fourth Amendment rights for unreasonable seizure, actionable pursuant to 42 U.S.C. § 1983 and (2) violation of J.H.'s Fourteenth Amendment rights for her "surreptitious seizure and interrogation of J.H." that "imposed an undue burden on the Plaintiff's associational rights," actionable pursuant to 42 U.S.C. § 1983. (Doc. No. 48, ¶¶ 30-35). Huckaby seeks dismissal of both counts against her, for failure to raise a genuine issue of material fact and based on qualified immunity.

### A.    Genuine Issue of Material Fact

First, Huckaby argues there is no genuine issue of material fact as to the claims against her, and she is entitled to judgment as a matter of law for both causes of action.

To prevail on a claim for relief in a § 1983 action, the plaintiff must establish the defendant's conduct deprived him of a federal constitutional or statutory right and the alleged deprivation was committed under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). A plaintiff must establish a federal constitutional question exists "not in mere form, but in substance, and not in mere assertion, but in essence and effect," to show a § 1983 remedy is available. *Smith v. Plati*, 258 F.3d 1167, 1176 (10th Cir. 2001) (quotation omitted). Huckaby argues the evidence before the Court establishes her only involvement in the

events of February 14, 2014, was in arranging J.H.'s transportation to the ABC House and conducting a forensic interview of J.H. Huckaby argues here, as she did in her Motion to Dismiss, that the Oklahoma Children's Code authorizes DHS social workers such as Huckaby to question a possible child abuse victim "at any place," including the child's school, without prior permission from a custodian. *See* OKLA. STAT. tit. 10A, § 1-2-105(B)(1). Huckaby further argues her actions complied with the applicable protocols of the "Interagency Agreement Bryan County Child Abuse Task Force" ("Protocols"). (*See* Doc. No. 106-8 (Protocols) (stating victim interviews will be conducted at the ABC House, and law enforcement shall take a child into protective custody if the child's welfare is endangered).

However, the Court finds the material facts in the record suffice to establish a genuine issue as to whether Huckaby violated J.H.'s Fourth and Fourteenth Amendment rights. As Plaintiff points out, a child's Fourth and Fourteenth Amendment rights may be implicated when he is unlawfully seized by state actors from a safe place. *See J.B. v. Washington Cnty.*, 127 F.3d 919, 928-29 (10th Cir. 1997) (county employees' temporary removal of child from her home for questioning regarding possible abuse implicated child's Fourth Amendment rights). The undisputed facts show that on February 14, 2014, Huckaby was employed by OKDHS as a "Child Welfare Specialist III." (Doc. No. 105, Undisputed Fact No. 2). On that date, OKDHS child welfare specialist Kari Reed contacted Huckaby about conducting a forensic interview of J.H. at ABC House about possible domestic violence he may have witnessed at home. (Doc. No. 106-2 (Affidavit of Sara Huckaby)). Reed asked Huckaby to contact Jeff Goerke about transporting J.H. to the ABC House from his school. (*Id.*). The need for a forensic interview was predicted upon facts presented at a meeting involving Reed on February 13, 2014. (Doc. No. 105, Undisputed Fact No. 8). Huckaby then contacted Goerke and asked him to transport

J.H. from his school to ABC House. (Doc. No. 105, Undisputed Fact No. 4). Plaintiff alleges, and Huckaby does not dispute, that J.H. was taken from school to the ABC House without the knowledge or permission of any guardian or caretaker. (Doc. No. 48, ¶ 19). Goerke took J.H. into "protective custody" at J.H.'s school, and transported him to the ABC House, as Huckaby had requested. (Doc. No. 105, Undisputed Fact No. 5). Huckaby then conducted a recorded forensic interview of J.H. at the ABC House, after which J.H. was returned to school. (Doc. No. 105, Undisputed Fact Nos. 6, 7).

These facts fail to establish any legal ground that would warrant Huckaby's directing Goerke to take J.H. into protective custody and transport J.H. from school to the ABC House without a court order or even notice to J.H.'s caretaker. Even if Huckaby did not personally seize or detain J.H., the record shows Huckaby, in her capacity as an OKDHS child welfare worker, arranged for Jeff Goerke to seize J.H. from his school and transport him to ABC House. As explained in the Court's Opinion and Order denying Huckaby's Motion to Dismiss, the Oklahoma Children's Code, though it does authorize *interviewing* a child "at any place," does not authorize *removing* a child from school in order to interview him at a place of her choosing. OKLA. STAT. tit. 10A, § 1- 2-105(B)(1). The Court cannot reasonably read such authority into the statute, as such a reading would authorize OKDHS workers to direct seizure and transportation of a child to any location for the purpose of a forensic interview. Huckaby points to no immediate threat of imminent harm to J.H. that would have allowed Huckaby to direct J.H.'s lawful removal from school. *Cf.* OKLA. STAT. tit. 10A, §§ 1-4-201(A)(1) (permitting a peace officer to take a child into custody without court order if he has "reasonable suspicion" that the child is in need of immediate protection due to an "imminent safety threat"). To the extent Huckaby or OKDHS interpret the Protocols to authorize taking a child into protective

custody without such reasonable suspicion of an imminent safety threat to the child, they do so at their peril. Accordingly, Huckaby is not entitled to judgment as a matter of law for the alleged violation of J.H.'s Fourth and Fourteenth Amendment rights.

## B.      Qualified Immunity

Second, Huckaby argues she is entitled to qualified immunity from personal liability for the § 1983 claims alleged against her in this case. "The doctrine of qualified immunity shields government officials performing discretionary functions from liability for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Boles v. Neet*, 486 F.3d 1177, 1180 (10th Cir. 2007) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Accordingly, in a § 1983 action in which the affirmative defense of qualified immunity from liability is at issue, the plaintiff bears the burden to show (1) the defendant's conduct violated their constitutional rights, and (2) those rights were clearly established at the time of the defendant's alleged misconduct. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

To convince the court that the law at the time of defendant's actions was clearly established, the plaintiff "must demonstrate a substantial correspondence between the conduct in question and prior law allegedly establishing that the defendant's actions were clearly prohibited." *Hilliard v. City and County of Denver*, 930 F.2d 1516, 1518 (10th Cir. 1991). (quotation omitted). Generally, for a right to be "clearly established," "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (quotation omitted). "The plaintiff is not required to show, however, that the very act in question previously was held unlawful in order to establish an

absence of qualified immunity." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (quotation omitted). Rather, the relevant inquiry is "whether the law put officials on fair notice that the described conduct was unconstitutional." *Gomes v. Wood*, 451 F.3d 1122, 1134 (10th Cir. 2006) (quotation omitted). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law," and immunity may be denied only "if, on an objective basis, it is obvious that no reasonably competent officer would have concluded" that the conduct was lawful at the time the defendant acted. *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

###     1.     Fourth Amendment

Here, Plaintiff alleges deprivation of J.H.'s Fourth Amendment right to be secure against unreasonable government seizures without probable cause. With respect to Huckaby, the record shows she arranged for Chief of Police Jeff Goerke to remove six-year-old J.H. from his school and transport him to the ABC House. (Doc. No. 106-2, Affidavit of Sara Huckaby). The record also shows Huckaby and OKDHS had no reason to believe J.H. was in immediate danger of imminent harm at his school, and thus no reason existed to remove J.H. from there. (*See* Doc. No. 105, Undisputed Fact No. 8 (establishing OKDHS waited a full day after internal meeting to arrange forensic interview of J.H.)). At the ABC House, Huckaby questioned J.H. for approximately forty minutes about his life at home and his relationship with his father. (Doc. No. 105-6 (DVD of recorded interview of J.H., Feb. 14, 2014)).

The record establishes sufficient facts to establish a Fourth Amendment claim under clearly established law. "A person is seized within the meaning of the Fourth Amendment when 'a reasonable person would believe that he or she is not "free to leave."'" *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (quoting *Florida v. Bostick*, 501 U.S. 429, 435 (1991)). As discussed above, the Tenth Circuit has recognized the Fourth Amendment rights of

minor children to be free from unreasonable seizure since at least 1997.  *See J.B. v. Washington Cnty.*, 127 F.3d 919, 928-29 (10th Cir. 1997).  Since at least 2003, the Tenth Circuit has recognized "[t]here is no 'social worker' exception to the Fourth Amendment."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1205 (10th Cir. 2003) (citing *Ferguson v. City of Charleston*, 532 U.S. 67, 76 n.9 (2001)).  In 2006, the Tenth Circuit found a child may be seized from a home when there is "reasonable suspicion of an immediate threat to the safety of the child," taking into account "*all relevant circumstances*, including the state's reasonableness in responding to a perceived danger, as well as the objective nature, likelihood, and immediacy of danger to the child."  *Gomes*, 451 F.3d at 1131 (quotation omitted).  Here, there is no evidence any objectively reasonable suspicion of an immediate threat of harm to J.H. existed.  Rather, the record shows J.H. was seized and taken to another location several miles away without any lawful authority or reasonable suspicion of any immediate threat to J.H.'s safety.  As explained above, the Oklahoma Children's Code does not authorize *removing* a child from school in order to interview him at a place of Huckaby's or OKDHS's choosing.

Accordingly, Huckaby is not shielded from liability with respect to Plaintiff's Fourth Amendment claim.  Her request for qualified immunity from this claim is denied.

## 2.    Fourteenth Amendment

Plaintiff also alleges a substantive due process claim against Huckaby under the Fourteenth Amendment.  Specifically, Plaintiff alleges violation of J.H.'s right to family integrity and association.  When a substantive due process claim under § 1983 is at issue, the court must examine "whether the challenged government action shocks the conscience of federal judges."  *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) (quotation omitted).  In this regard, "a

plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing government power." *Id.* (quotation omitted).

A plaintiff establishes a claim for deprivation of the right to familial association under the Fourteenth Amendment by demonstrating that "(1) defendants intended to deprive them of their protected relationship with their [family member], and that (2) balancing the [plaintiff's] interest in their protected relationship with [the family member] against the state's interest in [the child's] health and safety, defendants either unduly burdened plaintiffs' protected relationship, or effected an 'unwarranted intrusion' into that relationship." *Thomas v. Kaven*, 765 F.3d 1183, 1196 (10th Cir. 2014) (internal citations omitted).

Huckaby argues Plaintiff fails to establish a violation of the Fourteenth Amendment, because "[t]he right to family integrity clearly does not include a constitutional right to be free from child abuse investigations." *Watterson v. Page*, 987 F.2d 1, 8 (1st Cir. 1993). Here, the record indicates Huckaby interviewed J.H. in connection with a child abuse investigation. (*See* Doc. No. 106-1 (Report to District Attorney)). However, the record also shows more than two full days passed between the report of abuse to OKDHS and J.H.'s interrogation, which supports the reasonable inference that OKDHS did not believe J.H.'s welfare was at imminent risk. (Doc. No. 124-3 (Referral Information Report). Huckaby points to no reason for having Goerke seize J.H. from the safety of his school and transport him to the ABC House for purposes of investigating this admittedly low-priority case, which also strongly suggests an intent to deprive J.H. of his relationship with his father and an attempt to place an undue burden on J.H.'s relationship with his father. This law was clearly established by 2014. *See, e.g., Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1175 (10th Cir. 2013) ("In order to show deprivation of the right to familial association, a plaintiff must show that the state actor intended to deprive him or her of a

specially protected familial relationship."); *PJ ex. rel. Jensen v. Wagner*, 603 F.3d 1182, 1199 (10th Cir. 2010) ("The purpose of the balancing test is to ascertain whether a defendant's conduct constitutes an undue burden on the plaintiff's associational rights."); *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1190 (10th Cir. 1985) ("[W]e conclude that an allegation of intent to interfere with a particular relationship protected by the freedom of intimate association is required to state a claim under section 1983."). As explained above, the Oklahoma Children's Code does not authorize a child's removal from school under these circumstances, and the Protocols, to the extent they deviate from the Children's Code, do not protect Huckaby from liability.

Huckaby also argues, as she did in her Motion to Dismiss, that her alleged conduct is not "conscience shocking." Again, the Court disagrees. Huckaby's alleged actions, as supported in the record, do indeed "shock the conscience" of the Court and demonstrate actions that no reasonably competent social worker would believe were lawful. Under the circumstances, Huckaby's alleged action were either "plainly incompetent" or done in knowing violation of the law. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (quotation omitted). Accordingly, Huckaby is not entitled to qualified immunity from personal liability with regard to Plaintiff's claims under the Fourteenth Amendment. Huckaby's motion is denied.

## II.     Motion of OKDHS

Plaintiff asserts two *respondeat superior* claims against OKDHS as a result of Huckaby's actions: (1) violation of Article 2 § 30 of the Oklahoma Constitution for "unreasonable seizure" or "excessive force" and (2) violation of Article 2 § 7 of the Oklahoma Constitution for "unlawful targeting and interference with the familial relationship."

In its Motion for Summary Judgment, OKDHS raises essentially identical arguments to those made in its Motion to Dismiss—that Plaintiff's claims against it, which are made pursuant to *Bosh v. Cherokee County Building Authority*, 305 P.3d 994 (2013), should not be extended to the circumstances pled in this case. In this regard, the Court refers to its Opinion and Order denying OKDHS's Motion to Dismiss, in which the Court concluded the *Bosh* rule extends beyond claims of excessive force occurring inside a jail or prison and may provide a cause of action for violations of constitutional rights generally, even though the state may not be responsible for failure to comply with its reporting obligations or to protect an individual's safety against all possible danger. (Doc. No. 133). The Court identifies no reason to depart from its previous conclusion.

Applying this conclusion, the Court disagrees with OKDHS' argument that Plaintiff's allegations against it amount to no more than claims of negligence, which the Oklahoma Court of Civil Appeals has found not to be actionable *Bosh* claims. *See GJA v. Oklahoma Dep't of Human Servs.*, 347 P.3d 310 (Okla. Civ. App. 2015). Unlike *GJA*, this case does not involve failure to report actions by third parties or allegations of omission by OKDHS. Rather, the record shows Huckaby and OKDHS engaged in affirmative, intentional acts in having J.H. removed from school without permission or legal authority. (See Doc. No. 106-2 (Affidavit of Sara Huckaby)). The record suggests Huckaby had no basis under law to direct Goerke to take protective custody of J.H. on February 14, 2014, yet she used her authority as an OKDHS worker to do so. (*Id.*). The record indicates there was no immediate threat of harm to J.H., and Huckaby personally participated in the seizure by directing Goerke to act. (*Id.*; Doc. No. 124-3 (Referral Information Report)). These undisputed facts are sufficient to deny OKDHS judgment as a matter of law for violations of Article 2 § 30 and Article 2 § 7 of the Oklahoma Constitution.

Finally, OKDHS argues in its Reply brief that Plaintiff's claim for interference with the familial relationship fails as a matter of law, because establishment of such a claim requires an intentional interference with a protected relationship by government officers, which would clearly be outside the scope of employment. OKDHS argues under *Bosh*, a governmental entity can only be held liable for actions of employees which are within the scope of their employment. OKDHS fails to point to any authority supporting this argument. In any event, the Court will not comment on the issue of whether Huckaby acted within the scope of employment, because this point was raised only in OKDHS' response brief, which is improper. *See Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief.").

Accordingly, the motion of OKDHS is denied.[4]

### III.     Motion of Sheriff Golden and Deputy Calloway

####      A.      Deputy Calloway

Plaintiff asserts two causes of action against Calloway:  (1) violation of J.H.'s Fourth Amendment rights for unreasonable seizure, actionable pursuant to 42 U.S.C. § 1983 and (2) violation of J.H.'s Fourteenth Amendment rights for the "surreptitious seizure and interrogation of J.H." that "imposed an undue burden on the Plaintiff's associational rights," actionable pursuant to 42 U.S.C. § 1983.  (Doc. No. 48, ¶¶ 30-35).  Calloway seeks dismissal of both counts against him, for failure to raise a genuine issue of material fact as to whether a federal constitutional violation occurred and based on qualified immunity.

---

[4] Plaintiff states in his Response brief that he is not pursuing any claim for punitive damages against OKDHS.  (Doc. No. 119, at 10 n.4).  Accordingly, the claim for punitive damages against OKDHS is dismissed as moot.

### 1.    Genuine Issue of Material Fact

First, Calloway argues there is no genuine issue of material fact as to the claims against him, and he is entitled to judgment as a matter of law for both causes of action.

The standard for prevailing on a claim for relief in a § 1983 action is explained above with respect to Huckaby's motion. (Part I.A, *supra*). Like Huckaby, Calloway argues his conduct was authorized under the Oklahoma Children's Code: specifically, OKLA. STAT. tit. 10A, §§ 1-2-102, 1-4-201(A)(1), (E)(1), & (I); 1-2-104; 1-2-105;[5] and 1-3-103.

OKLA. STAT. tit. 10A, §§ 1-4-201(A)(1), which Calloway argues is the most compelling of these statutes, authorizes a peace officer to take a child into protective custody if the officer "has reasonable suspicion" that: (a) "the child is in need of immediate protection due to an imminent safety threat," or (b) "the circumstances or surroundings of the child are such that continuation in the child's home or in the care of the parent, legal guardian, or custodian would present an imminent safety threat to the child." OKLA. STAT. tit. 10A, § 1-4-201(A)(1). Under OKLA. STAT. tit. 10A, § 1-4-201(E)(1), which Calloway argues is also "most compelling," whenever a child is taken into protective custody pursuant to this section, the child may be taken to a kinship care home or an emergency foster home, or to a children's shelter if no such home is available. However, as explained above with respect to Huckaby, Calloway offers no evidence to indicate J.H. was subject to an imminent safety threat at school that would warrant taking him into protective custody. Therefore, J.H. was not taken to a kinship care home pursuant to the Children's Code.

The remaining provisions Calloway cites do not provide support for his argument that no constitutional violation occurred. OKLA. STAT. tit. 10A, §§ 1-2-102 addresses child abuse

---

[5] Calloway's brief states his conduct was authorized by OKLA. STAT. tit. 10A, §§ 2-104 and 2-105. (Doc. No. 103, at 14). However, no such statutes exist. Therefore, the Court presumes Calloway intends to refer to §§ 1-2-104 and 1-2-105.

investigation procedures generally and does not specifically authorize taking a child into protective custody. OKLA. STAT. tit. 10A, § 1-2-104 provides immunity for those who report suspected child abuse or allow access to a child by person authorized to investigate a report concerning the child. Because Plaintiff does not allege Calloway merely reported suspected child abuse or granted access to J.H., this provision is inapplicable to the claims against Calloway. OKLA. STAT. tit. 10A, § 1-2-105(B)(1) authorizes DHS investigators to interview a suspected child abuse victim "at any place," including the child's school, without prior permission from a custodian and authorizes DHS to recommend a child be taken into custody during an investigation if it determines that immediate removal of the child is necessary to protect the child from further abuse or neglect. *See* OKLA. STAT. tit. 10A, §§ 1-2-105(B)(1) & (D). However, as explained above with respect to Huckaby, § 1-2-105 does not authorize removal of a child from his school for purposes of a forensic interview, and no evidence has been presented to indicate DHS believed immediate removal of J.H. was necessary to protect him from harm. OKLA. STAT. tit. 10A, § 1-4-201(I) provides immunity for officers acting in good faith in transporting a child when acting pursuant to this section. As explained above, § 1-4-201 does not protect Calloway in these circumstances, because he did not take J.H. into custody pursuant to a reasonable suspicion that he was subject to an imminent safety threat. Finally, OKLA. STAT. tit. 10A, § 1-3-103 provides immunity for officers for obtaining medical treatment or behavioral health evaluation or treatment in accordance with the provisions of the Children's Code. Calloway does not explain how this provision applies to him, but the record does not support an imminent safety threat to J.H. that would authorize taking him into protective custody for purposes of a behavioral health evaluation.

Calloway appears to take the position that, because there was "reasonable suspicion" and "probable cause" for an investigation to take place into J.H.'s living conditions, he was also authorized to take J.H. into protective custody in connection with that investigation. (*See* Doc. No. 103, at 15). However, Calloway provides no support, statutory or otherwise, in support of this position. The Oklahoma Children's Code is clear that a law enforcement officer may take a child into protective custody without a court order if there is an imminent threat to the child's safety, but it does *not* authorize taking a child into protective custody merely because an investigation is underway.

As with Huckaby, the Court finds the record suffices to establish a genuine issue as to whether Calloway violated J.H.'s Fourth and Fourteenth Amendment rights. As explained above, a child's Fourth and Fourteenth Amendment rights may be implicated when he is unlawfully seized by state actors from a safe place. *See J.B. v. Washington Cnty.*, 127 F.3d 919, 928-29 (10th Cir. 1997). The facts show that in February, 2014, Calloway was employed as a Deputy Sheriff for the Bryan County Sheriff's Office. (Doc. No. 103, Undisputed Fact No. 1). Calloway was already familiar with J.H.'s family through prior investigations of domestic abuse in J.H.'s home involving Mr. Halley and his wife Brittany Halley. (Calloway Declaration, ¶¶ 25-27). There is some evidence, though disputed, that it was Calloway's idea on February 13, 2014, to take J.H. into protective custody when he met with OKDHS supervisor Kari Reed. (*Compare* Reed Depo., 15:4-8 (Reed testified it was Calloway's idea on February 13, 2014, to take J.H. from his school on February 14) *with* Calloway Decl., ¶¶ 10-11 (Calloway stated OKDHS worker contacted him for assistance on February 14, 2014, in placing J.H. into protective custody, and he advised Goerke could assist if "she believed the matter was urgent."). On February 14, 2014, Calloway communicated with an OKDHS child welfare worker about

Calloway's transporting J.H. to the ABC House for a forensic interview. (Calloway Declaration, ¶ 10). Although Calloway was unavailable at that time to transport J.H., Calloway later proceeded to the ABC House, where he prepared the recording equipment for J.H.'s forensic interview with Sara Huckaby. (*Id.* ¶¶11-17). After the interview, Calloway transported J.H. back to his school and returned him to his classroom. (*Id.* ¶¶ 19-22).

The record shows Calloway, in his capacity as a Bryan County Sheriff's Deputy, participated in the seizure of J.H. from his school, the forensic interview, and transportation of J.H. back to school. At the same time, the record fails to demonstrate any legal basis for Calloway's participating in J.H.'s forensic interview at the ABC House or taking J.H. into protective custody and transporting J.H. from the ABC House, without a court order or notice to J.H.'s caretaker. The process that resulted in J.H.'s seizure, which Calloway may have directed, suggests J.H.'s family may have been targeted for reasons unrelated to concerns for J.H.'s safety.

As with Huckaby, to the extent Calloway interprets the Protocols to authorize taking a child into protective custody without such reasonable suspicion of an imminent safety threat to the child, he does so at his peril. Accordingly, Calloway is not entitled to judgment as a matter of law for the alleged violation of J.H.'s Fourth and Fourteenth Amendment rights.

### 2. Qualified Immunity

Second, Calloway argues he is entitled to qualified immunity from personal liability for the § 1983 claims alleged against him in this case. The Court explained the qualified immunity standard above with respect to Huckaby's claim for qualified immunity (*see* Part I.B, *supra*), and the same standard applies to Calloway's claim for qualified immunity.

### a)    Fourth Amendment

Here, Plaintiff alleges deprivation of J.H.'s Fourth Amendment right to be secure against unreasonable government seizures without probable cause.  With respect to Calloway, the record suggests Calloway met with OKDHS child welfare specialist Kari Reed and her supervisor Crystal Keeney on the morning of February 13, 2014, to discuss how to proceed regarding the referral dated February 12, 2014.  (Reed Depo., 16:1-13).  At that meeting, Calloway proposed taking J.H. into protective custody for a forensic interview the following day.  (*Id.* at 15:4-8).  There is no evidence that the three concluded J.H. was in imminent danger during that meeting, based on either the referral or the family history.  Indeed, Calloway and OKDHS decided to wait a full day before taking J.H. into custody.  Moreover, Calloway appears to dispute that he believed it was urgent to take J.H. into custody.  (*See* Calloway Decl., ¶ 11 (stating Calloway advised OKDHS case worker that Jeff Goerke could assist with taking J.H. into custody on February 14, 2014, "if she believed the matter was urgent.")).  On February 14, 2014, Calloway met Sara Huckaby, Jeff Goerke, and J.H. at the ABC House, where he prepared the recording equipment for J.H.'s forensic interview with Huckaby.  (Calloway Decl., ¶¶ 14-17).  After the interview, Calloway transported J.H. back to his school and returned him to his classroom.  (*Id.*, ¶¶ 19-22).

The record establishes sufficient facts to allege a Fourth Amendment claim under clearly established law.  "A person is seized within the meaning of the Fourth Amendment when 'a reasonable person would believe that he or she is not "free to leave."'"  *Roska ex rel. Roska v. Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (quoting *Florida v. Bostick*, 501 U.S. 429, 435 (1991)).  As discussed above, the Tenth Circuit has recognized the Fourth Amendment rights of minor children to be free from unreasonable seizure since at least 1997.  *See J.B. v. Washington*

*Cnty.*, 127 F.3d 919, 928-29 (10th Cir. 1997).[6]  In 2006, the Tenth Circuit found a child may be seized from a home when there is "reasonable suspicion of an immediate threat to the safety of the child," taking into account "*all relevant circumstances*, including the state's reasonableness in responding to a perceived danger, as well as the objective nature, likelihood, and immediacy of danger to the child."  *Gomes v. Wood*, 451 F.3d 1122, 1131 (10th Cir. 2006) (quotation omitted).

Here, there is no evidence such reasonable suspicion of an immediate threat of harm to J.H. existed based on either the referral or the family history, particularly while J.H. was at school.  Rather, as discussed above, the record shows J.H. was seized and taken to another location several miles away without any lawful authority or reasonable suspicion of any immediate threat to J.H.'s safety.  Moreover, there is a genuine issue of fact regarding who decided it was necessary to take J.H. into custody and on what basis, which calls into question whether *anyone* actually determined J.H. was in imminent danger during the investigation. (*Compare* Reed Depo., 15:4-17 (Reed testified it was Calloway's idea to take J.H. into protective custody based on Calloway's conclusion J.H.'s family would not cooperate) *with* Calloway Decl., ¶¶ 10-11 (Calloway stated OKDHS worker contacted him for assistance in placing J.H. into protective custody, and he advised Goerke could assist if "she believed the matter was urgent.").  The evidence also indicates it was rare for OKDHS to take a child into protective custody for purposes of a forensic interview, which should have caused a reasonable officer to question whether a child such as J.H. was under an immediate threat of imminent harm before

---

[6] In his Reply brief, Calloway argues *J.B.* supports Calloway's actions, because the court in *J.B.* held the county officials' decision to take a child into custody for an interview regarding suspected child abuse was constitutional. However, the Court finds *J.B.* to be factually distinguishable.  In *J.B.*, the county officials obtained a judicial order authorizing the temporary removal of the child from her home based on sworn statements and signed pleadings, which the Tenth Circuit found to be constitutionally proper.  *J.B.*, 127 F.3d at 926.  Here, the seizure occurred after OKDHS received an anonymous call alleging possible exposure to domestic violence.  Based apparently only on the call and J.H.'s family history, the determination was made to seize J.H. from school, which is a far cry from obtaining a judicial order for temporary protective custody.

participating in the child's seizure.  (*See* Reed Depo., 76:24-77:6 ("Q. Okay.  So how many of the several hundred priority twos that you've been involved in involved a child placed in protective custody?  A.  Five or less.").

The record does not support Calloway's claim that there was probable cause for Calloway to take custody of J.H. and observe an interview of him, such that he may rightfully claim qualified immunity under an objective standard.  *Cf. Mueller v. Auker*, 700 F.3d 1180, 1187-88 (9th Cir. 2012) (detective was entitled to qualified immunity for seizing child from medical treatment, where he had relied on opinion of qualified medical professionals in determining the child was in imminent danger of serious illness); *Xiong v. Wagner*, 700 F.3d 282, 290-92 (7th Cir. 2012) (caseworkers were entitled to qualified immunity for taking child into protective custody, where they reasonably believed child faced an immediate threat of abuse based on referral from child's school, prior reports suggestive of abuse or neglect, interviews of child, child's teachers, and siblings, bruising on child, and corroborated allegations that child had been left alone for hours at a time and had been thrown onto the ground).  The record also does not support Calloway's argument that he is protected under the "special needs" doctrine based on the reasonableness of the seizure.

Accordingly, Calloway is not shielded from liability with respect to Plaintiff's Fourth Amendment claim.  His request for qualified immunity from this claim is denied.

### b)    Fourteenth Amendment

Plaintiff also alleges a substantive due process claim against Calloway under the Fourteenth Amendment.  Specifically, Plaintiff alleges violation of J.H.'s right to family integrity and association.  The qualified immunity standard with respect to a substantive due process claim under § 1983 is stated above with respect to Huckaby's claim.  (*See* Part I.B.2, *supra*).

Calloway argues Plaintiff fails to establish a violation of the Fourteenth Amendment, because there is no evidence that he directed his conduct at the familial relationship. Calloway further argues there is no evidence J.H.'s seizure and interview were done in retaliation against J.H.'s father, Doug Halley.

Here, the record indicates Calloway assisted in J.H.'s interview and transported him in connection with a child abuse investigation. (*See* Doc. No. 110-4 (Associated Referral Information)). However, the record also shows more than two full days passed between the report of abuse to OKDHS and J.H.'s interrogation, which supports the reasonable inference that Calloway and OKDHS did not believe J.H.'s welfare was at imminent risk. (*Id.* at 16). If it is ultimately proven that Calloway recommended J.H. be seized from his school for a forensic interview, there is no proffered explanation for this recommendation other than lack of family cooperation, which also strongly suggests an intent to deprive J.H. of his relationship with his father and an attempt to place an undue burden on J.H.'s relationship with his father. It was a rare occurrence for a child to be taken into protective custody for an interview, which also calls Calloway's and OKDHS's motives into question. (*See* Reed Depo., 76:24-77:6). This law was clearly established by 2014, as explained in greater detail with regard to Huckaby. (*See* Part I.B.2, *supra*). *See Estate of B.I.C. v. Gillen*, 710 F.3d 1168, 1175 (10th Cir. 2013); *PJ ex. rel. Jensen v. Wagner*, 603 F.3d 1182, 1199 (10th Cir. 2010); *Trujillo v. Bd. of Cnty. Comm'rs of Santa Fe Cnty.*, 768 F.2d 1186, 1190 (10th Cir. 1985). As explained above, the Oklahoma Children's Code does not authorize a child's removal from school under these circumstances, and the Protocols, to the extent they deviate from the Children's Code, do not protect Calloway from liability.

Calloway does not attempt to argue his alleged conduct is not "conscience shocking." However, the Court concludes Calloway's alleged actions, as supported in the record, do indeed "shock the conscience" of the Court and demonstrate actions that no reasonably competent sheriff's deputy would believe were lawful. Under the circumstances, Calloway's alleged action were either "plainly incompetent" or done in knowing violation of the law. *Hunter v. Bryant*, 502, U.S. 224, 229 (1991) (quotation omitted). Accordingly, Calloway is not entitled to qualified immunity from personal liability with regard to Plaintiff's claims under the Fourteenth Amendment.

### 3. Oklahoma Constitution and OGTCA

Finally, Calloway argues he is immune from any liability under the Oklahoma Constitution or the OGTCA, because he was acting within the scope of his employment as an employee of the Bryan County Sheriff's Office. Without commenting on the validity of Calloway's argument, the Court notes Plaintiff does not allege claims under the Oklahoma Constitution or the OGTCA against Calloway. Accordingly, no further analysis is required.

Calloway's motion is denied.

### B. Sheriff Golden

Plaintiff asserts two *respondeat superior* claims against Sheriff Golden as a result of Deputy Calloway's actions: (1) violation of Article 2 § 30 of the Oklahoma Constitution for "unreasonable seizure" or "excessive force" and (2) violation of Article 2 § 7 of the Oklahoma Constitution for "unlawful targeting and interference with the familial relationship." Plaintiff also seeks relief against Sheriff Golden in his official capacity under the OGTCA, for failure to exercise reasonable care by removing or allowing the removal of J.H. from the custodial care of

his classroom without proper legal authority. Sheriff Golden argues judgment should be granted in his favor on these claims.

### 1.    42 U.S.C. § 1983

Sheriff Golden devotes a large portion of his brief to the argument that a 42 U.S.C. § 1983 claim cannot be raised against the Sheriff in his official capacity, or the Sheriff's Office, because (1) Plaintiff fails to prove the elements of a § 1983 claim against either Sheriff Golden or the Sheriff's Office and (2) a sheriff's office is not a suable entity under § 1983. The Court fails to appreciate the relevance of these argument, as Plaintiff has not asserted a § 1983 claim against Sheriff Golden but rather sues him in his official capacity pursuant to the Oklahoma Constitution and the OGTCA. Plaintiff confirms as much in his Response. (Doc. No. 123, at 11). Accordingly, this argument is moot.

### 2.    Oklahoma Constitution

With respect to Plaintiff's claims against Sheriff Golden pursuant to the Oklahoma Constitution, Sheriff Golden argues in a conclusory manner that there were no violations of the Oklahoma Constitution. Sheriff Golden refers to OKLA. STAT. tit. 10A, § 1-4-201, which authorizes a peace officer to take a child into custody without a court order if he has reasonable suspicion that the child is in need of immediate protection due to an imminent safety threat. However, as explained above with respect to Calloway, there remains a genuine issue of material fact as to whether J.H. was in need of immediate protection due to an imminent safety threat on February 14, 2014, while he was at school. No evidence has been presented to indicate that J.H. was in a situation of imminent danger while at school on that date or that any reasonable officer would believe J.H. was in imminent danger based on the circumstances of the investigation.

Sheriff Golden further argues he is not liable under state law, because the lawsuit is against the entity he represents, the Bryan County Sheriff's Office. While the Court agrees with Sheriff Golden that an "official capacity" claim is essentially the same as a claim against the county, *see Becker v. Bateman*, 709 F.3d 1019, 1021 n.1 (10th Cir. 2013), Sheriff Golden offers no compelling reason why suit against him in his official capacity should be dismissed as improper. Accordingly, Sheriff Golden's motion is denied with respect to these claims.

### 3.     OGTCA Claim

With respect to Plaintiff's claim under the OGTCA, Sheriff Golden alleges Calloway committed no violation of Oklahoma law. However, as explained above, there remains an issue of material fact as to whether Calloway was acting on a reasonable suspicion that J.H. was subject to an imminent safety threat when he participated in the seizure and forensic interview of J.H. without a court order. Accordingly, Sheriff Golden's motion for summary judgment is denied in this regard.

Finally, Sheriff Golden argues the Bryan County Sheriff's Office is not a suable entity under the OGTCA. *See* OKLA. STAT. tit. 51, § 152(11) (definition of "political sub-division" does not include a sheriff's office). Although Sheriff Golden does not elaborate on this argument, the Court agrees with Sheriff Golden that OGTCA claims may be brought only against the state or a political subdivision, which does not include a sheriff's office. *See* OKLA. STAT. tit. 51, § 153. Accordingly, this claim may be properly presented only against the political subdivision, the county. 51 O.S. § 152(11). State law requires OGTCA claims such as this to be presented against the county's Board of County Commissioners. OKLA. STAT. tit. 19, § 4. *See Speight v. Presley*, 203 P.3d 173, 179 (Okla. 2008) ("[s]uit against a government officer in his or her official capacity is actually a suit against the entity that the officer represents," which "is

improper under the [O]GTCA." (citing *Pellegrino v. State ex rel. Cameron University*, 63 P.3d 535, 537 (Okla. 2003)).  Therefore, Sheriff Golden is granted summary judgment as to the OGTCA claim against him in his official capacity.

## IV.    Motion of Goerke

Plaintiff asserts one causes of action against Goerke:  (1) violation of J.H.'s Fourth Amendment rights for unreasonable seizure, actionable pursuant to 42 U.S.C. § 1983.  (Doc. No. 48, ¶¶ 30-32).  Goerke argues he is entitled to qualified immunity from personal liability for the § 1983 claim alleged against him.  The Court explained the qualified immunity standard above with respect to Huckaby's claim for qualified immunity (*see* Part I.B, *supra*), and the same standard applies to Goerke's claim for qualified immunity.

Here, Plaintiff alleges deprivation of J.H.'s Fourth Amendment right to be secure against unreasonable government seizures without probable cause.  With respect to Goerke, the record shows he removed six-year-old J.H. from his school and transported him to the ABC House at the request of OKDHS employee Sara Huckaby.  (Doc. No. 106-2, Affidavit of Sara Huckaby).  The record also provides no reason for OKDHS or Goerke to believe J.H. was in immediate danger of imminent harm at his school, and thus no reason existed to remove J.H. from school for purposes of an interview.  (*See* Doc. No. 110-9 (showing two full days elapsed between receipt of OKDHS hotline call and interview of J.H.)).  (*See also* Parts I, III.A, *supra* (further discussing lack of grounds for reasonable suspicion that J.H. was subject to an imminent safety threat).

The record establishes sufficient facts to allege a Fourth Amendment claim under clearly established law.  "A person is seized within the meaning of the Fourth Amendment when 'a reasonable person would believe that he or she is not "free to leave."'"  *Roska ex rel. Roska v.*

*Peterson*, 328 F.3d 1230, 1243 (10th Cir. 2003) (quoting *Florida v. Bostick*, 501 U.S. 429, 435 (1991)). As discussed above, the Tenth Circuit has recognized the Fourth Amendment rights of minor children to be free from unreasonable seizure since at least 1997. *See J.B. v. Washington Cnty.*, 127 F.3d 919, 928-29 (10th Cir. 1997). In 2006, the Tenth Circuit found a child may be seized from a home when there is "reasonable suspicion of an immediate threat to the safety of the child," taking into account "*all relevant circumstances*, including the state's reasonableness in responding to a perceived danger, as well as the objective nature, likelihood, and immediacy of danger to the child." *Gomes v. Wood*, 451 F.3d 1122, 1131 (10th Cir. 2006) (quotation omitted). Here, there is no evidence such reasonable suspicion of an immediate threat of harm to J.H. existed. Rather, as discussed above with respect to Huckaby and Calloway, the record shows Goerke seized J.H. and took to another location several miles away without any lawful authority or reasonable suspicion of any immediate threat to J.H.'s safety.

Goerke argues he did not violate J.H.'s constitutional rights, because his transport was conducted properly pursuant to OKLA. STAT. tit. 10A, § 1-4-201(A), which authorizes a peace officer to take a child into protective custody if the officer "has reasonable suspicion" that: (a) "the child is in need of immediate protection due to an imminent safety threat," or (b) "the circumstances or surroundings of the child are such that continuation in the child's home or in the care of the parent, legal guardian, or custodian would present an imminent safety threat to the child." However, as explained above with respect to Huckaby and Calloway, Goerke offers no evidence to indicate J.H. was subject to an imminent safety threat at school that would warrant taking him into protective custody.

Goerke cites additional provisions of the Children's Code in support of his argument that his conduct was authorized. The Court disagrees that any such statutory support existed. OKLA.

STAT. tit. 10A, § 1-2-105(B)(1) authorizes DHS investigators to interview a suspected child abuse victim "at any place," including the child's school, without prior permission from a custodian. However, as explained above with respect to Huckaby and Calloway, § 1-2-105 does not authorize removal of a child from his school for purposes of a forensic interview, and no evidence has been presented to indicate any basis for reasonable belief that immediate removal of J.H. was necessary to protect him from harm. Even if, as Goerke argues, he merely transported J.H. to the interview because Calloway was unavailable, Goerke is nonetheless responsible for his actions in taking J.H. into protective custody. Finally, OKLA. STAT. tit. 10A, § 1-4-201(I) provides immunity for officers acting in good faith in transporting a child when acting pursuant to this section. As explained above, § 1-4-201 does not protect Goerke in these circumstances, because he did not take J.H. into custody pursuant to a reasonable suspicion that he was subject to an imminent safety threat.

Goerke further argues the Protocols require interviews to be conducted at ABC House, and the Protocols have not been determined by any court to be a violation of any constitutional rights. However, to the extent Goerke interprets the Protocols to authorize taking a child into protective custody without reasonable suspicion of an imminent safety threat to the child, he interprets them in a manner that is contrary to the express provisions of the Oklahoma Children's Code and clearly established law as stated throughout this Opinion and Order. The Protocols do not, and cannot, eviscerate the statutory "imminent safety threat" standard for taking a child into protective custody. Under the circumstances of this case, Goerke's actions were either plainly incompetent or done in knowing violation of the law.

Accordingly, Goerke is not shielded from liability with respect to Plaintiff's Fourth Amendment claim. His request for qualified immunity from this claim is denied.

**CONCLUSION**

For the reasons detailed above, the Motions for Summary Judgment of Defendants Huckaby, OKDHS, Calloway, and Goerke (Doc. Nos. 101, 103, 104, 105) are **DENIED**. The Motion for Summary Judgment of Defendant Ken Golden, in his official capacity as Sheriff of Bryan County, Oklahoma (Doc. No. 103), is **GRANTED** with respect to the claim against him pursuant to the OGTCA and **DENIED** with respect to the claims against him pursuant to the Oklahoma Constitution.

       **IT IS SO ORDERED** this 13th day of October, 2016.

James H. Payne
United States District Judge
Eastern District of Oklahoma